02-11-140-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00140-CR

 

 


 
 
 William Bruce Tolleson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 355th
District Court OF Hood COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          Appellant
William Bruce Tolleson appeals his convictions on two counts of assault,
contending in a single issue that the evidence is legally and factually
insufficient.  We affirm.

Standard
of Review

          The
court of criminal appeals has held that there is no meaningful distinction
between the legal sufficiency standard and the factual sufficiency standard.  Brooks
v. State, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (overruling Clewis
v. State, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).  Thus, the Jackson
standard, which is explained below, is the “only standard that a reviewing
court should apply in determining whether the evidence is sufficient to support
each element of a criminal offense that the State is required to prove beyond a
reasonable doubt.”  Id. at 912.

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v.
State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Factual
and Procedural Background

          A
two-count indictment charged Appellant with committing assault against his
live-in girlfriend, Anita Barrett.  Count one alleged that he intentionally,
knowingly, or recklessly impeded Anita’s normal breathing or circulation by
applying pressure to her throat or neck or by blocking her nose or mouth, and
that Anita was a member of his household or a person with whom he had a dating
relationship.  Count two alleged that he intentionally, knowingly, or
recklessly caused bodily injury to Anita—a member of his household or a person
with whom he had a dating relationship—by slapping her face, pushing her, and
grabbing her neck and choking her.  Each count in the indictment preceded
enhancement paragraphs alleging Appellant had two previous convictions for
assault family violence.

          A
jury found Appellant guilty as charged in both counts and assessed his
punishment at twenty years’ confinement with a $3,500 fine for count one, and ten
years’ confinement plus a $2,500 fine for count two.  The trial court sentenced
Appellant accordingly and ordered that the sentences run concurrently.

          Section
22.01(a)(1) of the penal code provides that a person commits an offense if he
intentionally, knowingly, or recklessly causes bodily injury to another,
including the person’s spouse.  Tex. Penal Code Ann. § 22.01(a)(1) (West
2011).  Subsection (b-1) applies to the first count in the indictment and
elevates the offense to a second degree felony if the offense is committed
against a person whose relationship or association with the defendant is
described by sections 71.0021(b), 71.003, or 71.005 of the family code, the
defendant has a previous conviction for assault family violence, and if the
offense is committed by intentionally, knowingly, or recklessly impeding the
normal breathing or circulation of the blood of the other person by applying
pressure to that person's throat or neck or by blocking their nose or mouth.  Id.
§ 22.01(b-1).  Section 71.0021 of the family code describes a “dating
relationship” as one between individuals who have been or have had a continuing
romantic or intimate relationship.  Tex. Fam. Code Ann. § 71.0021(b) (West Supp.
2011).  Section 71.005 describes a “household” as a unit composed of persons
living together in the same dwelling without regard to whether they are related
to each other.  Id. § 71.005 (West 2008).[2]


          Penal
code section 22.01(b)(2) applies to the second count of the indictment and
elevates the offense to a third-degree felony if the actor intentionally,
knowingly, or recklessly caused bodily injury to a person described in the
above cited sections of the family code.  Tex. Penal Code Ann.
§ 22.01(b)(2) (West 2011).

          The
evidence at trial showed that in January 2010, Appellant and Anita Barrett were
involved in a dating relationship and were living together in Granbury.  Anita
testified that she and Appellant were “boyfriend-girlfriend” and had been
living together for eighteen months.  On January 13, they were drinking as they
prepared to move to a different home within their subdivision.  At some point they
decided to go to a local bar called TJ’s, and there they continued drinking. 
Anita testified that they got into an argument at the bar and that she left,
catching a ride from a woman driving by.  After she was dropped off, she told a
neighbor, Sharon McHenry, that she had caught a ride back from the bar.  She
then went into her home and went to sleep.

          When
Appellant came home, Anita awoke to him screaming and grabbing her by her
shoulders and throat.  Appellant squeezed Anita’s throat, causing her to cough
and nearly black out.  She testified that during the attack, he slapped her,
pushed her to the floor, pulled her by the hair, and grabbed her by the jaw. 
She managed to escape and run—clad only in a robe and socks––from her house to
Sharon’s.

          On
the way to Sharon's, Anita tripped on some flagstones and skinned her knees. 
When she got to Sharon’s door, she pounded on it, waking Sharon, who ushered
her inside and tried to find out what had happened.  Anita was crying
hysterically but managed to say, “He’s trying to kill me.”  Sharon observed bruising
and finger marks on Anita’s neck, bruising on her chin and head, and an area
where some of Anita’s hair had been pulled out.  Sharon called 911.

          Hood
County Sheriff’s Corporal Lance McLean and Investigator Patrick Felan and
Paramedic Katherine Jolly arrived sometime after 11:00 p.m.  Corporal McLean
entered Sharon’s house and was led to a bedroom where he found Anita sitting on
a bed, crying.  He noticed abrasions on her knees, as well as red marks on her
face and throat.  Paramedic Jolly then examined Anita.  She complained to Jolly
of pain to her head, face, and back of her neck, which she said was caused from
her being strangled, punched, and thrown against a wall and the floor.  Jolly
testified that her report indicated that Anita’s face and neck were not
discolored, but she added that since Anita had been crying, it would have been
hard to notice evidence of trauma due to the redness and puffiness caused by Anita’s
crying.  Anita went by ambulance to Granbury Medical Center.

          Officer
McLean testified that after he spoke with Anita, he went to the home she shared
with Appellant and found Appellant on a couch and wearing a gray sweatshirt
that appeared to have blood on it.  McLean described the house to be in a state
of disarray, and the State had photographs the officer had taken at the house
admitted in evidence.  McLean also noticed a mattress on the floor of the house
just inside the front door.  Broken pieces of glass were on the mattress and
the floor, cigarettes were strewn about the room, and a crushed piece of fruit
lay on the floor.  There was also a broken picture frame on the floor and a
lamp tipped over on its side.  McLean also testified that Appellant admitted
that an argument between him and Anita at the house had become “physical.”

          At
the hospital, emergency room physician Dr. Don Davis treated Anita.  He
recorded that she had injuries to her lower extremities, as well as an area of
discomfort in the front of the chest wall along with tenderness near the back
of the neck.  At trial, Dr. Davis acknowledged that photographs of Anita’s
injuries taken at the hospital showed redness on her chin and an area of
discoloration on her chest.  Anita was discharged the next morning, went to
Sharon’s house to collect some of her things, and then left for her parents’
house.

Discussion

          In
a single issue, Appellant argues that there is “significant reasonable doubt
about the factual sufficiency of the evidence in this case” due to
misstatements and evidentiary inconsistencies.  This argument invites us to
assess the credibility of alleged misstatements and to weigh evidence that may
or may not be inconsistent with other evidence.  Under the applicable standard
of review, however, we can do neither.

          The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).  When performing an evidentiary sufficiency review, we may not
re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we “determine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.”  Hooper v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App.
2007).  We must presume that the factfinder resolved any conflicting inferences
in favor of the verdict and defer to that resolution.  Jackson, 443 U.S.
at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.

          Based
on our review of the record under the appropriate standard of review, we hold
that a rational jury could have reasonably concluded beyond a reasonable doubt
that Appellant committed each offense as alleged in the indictment.  Therefore,
we hold that the evidence is sufficient to support his convictions. 
Accordingly, we overrule Appellant’s sole issue.

Conclusion

          Having
overruled Appellant’s sole issue, we affirm the judgment of the trial court.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
GARDNER,
McCOY, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 23,
2012









[1]See Tex. R. App. P. 47.4.





[2]Section 71.003 defines
“family.”